## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

DAVID HAROLD EILOLA,                    )
                                        )
            **Petitioner,**             )
v.                                      )            **Civil Action No. 2:16-11572**
                                        )
RALPH TERRY, Warden,                    )
                                        )
            **Respondent.**             )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Respondent's Motion to Dismiss (Document No. 11), filed on January 23, 2017. By Order entered on December 2, 2016, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 5.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's Motion to Dismiss.

## PROCEDURE AND FACTS

1.      **Case No. 06-F-240:**

Following a four-day jury trial, Petitioner was convicted in the Circuit Court of Kanawha County on April 26, 2007, of Attempted Murder in the First Degree, Malicious Assault, Arson in the Fourth Degree, Violation of a Domestic Violence Protective Order, and Domestic Battery. State v. Eilola, 226 W.Va. 698, 704 S.E.2d 698 (2010). By Order entered on August 8, 2007, the Circuit Court imposed sentences of three to fifteen years for Attempted First Degree Murder; two to ten years for Malicious Assault; two years for Fourth Degree Arson; twelve months for Violation of a Domestic Violence Protective Order; and twelve months for Domestic Battery. Id.

The Circuit Court directed that all sentences run consecutively, resulting in a total incarceration period of 9 to 29 years. Id. On August 9, 2007, the Circuit Court appointed Ms. Paula M. Cunningham to represent Petitioner on direct appeal. On August 16, 2007, the Circuit Court entered a Commitment Order setting Petitioner's sentencing date as March 28, 2006, as to reflect 495 days of presentence credit. Id. The State, however, filed a Motion to Correct Commitment Order on August 21, 2007. Id. The State argued that the Commitment Order was incorrect because it attributed Petitioner with credit for time served against the initial portion of the sentence in a manner inconsistent with State v. Middleton, 220 W.Va. 89, 640 S.E.2d 152 (2006). Id. By Order entered on November 21, 2007, the Circuit Court granted the State's Motion directing that "the commitment shall be amended to reflect that the effective sentencing date and actual sentencing date shall be the 6th day of August, 2007" and "the defendant's credit for time served calculated at four hundred ninety-five (495) days shall be deducted from the maximum aggregated sentence by the Commissioner of Corrections." Id.

In February 2008, Petitioner filed a *pro se* Motion for Appointment of New Appellate Counsel. (Document No. 13-3, p. 4.) On March 7, 2008, the Circuit Court conducted a hearing and denied Petitioner's *pro se* Motion for Appointment of New Appellate Counsel.[1] (Document No. 13-3.) Following the denial of Petitioner's *pro se* Motion, Ms. Cunningham made an oral

---

[1] The Circuit Court summarized Petitioner's motion as complaining that Ms. Cunningham would not respond to him, missed filing deadlines, would not take telephone calls or give progress reports, she was working to keep Petitioner in jail, and working in "cahoots' with the Prosecutor. In Response, Ms. Cunningham acknowledged that she missed the deadline for perfecting Petitioner's appeal by filing the Petition for Appeal. Ms. Cunningham, however, explained that the Petition was prepared and ready for timely filing but Petitioner instructed her not the file the Petition. Ms. Cunningham stated that Petitioner instructed her not the file the Petition unless she included certain other claims Petitioner wished to assert. Ms. Cunningham explained that she refused to include such claims because she found them to be completely meritless. Petitioner disputed Ms. Cunningham's claim that he instructed her not to file the Petition. Petitioner stated that he merely stated that he did not want the Petition filed prior to his review and approval.

motion for the Court to resentence Petitioner for purposes of perfecting his appeal. (Id., pp. 17 – 18.) Petitioner objected to resentencing by arguing that he must be released from custody because he was denied the right to appeal. (Id.) Despite attempts by Circuit Court and Ms. Cunningham to explain that the purpose of resentencing was to restart the "appeal clock" so that Petitioner could file his appeal, Petitioner continued to object to resentencing by arguing that he must be released from custody. (Id., pp. 19 – 28.) Despite Petitioner's objections, the Circuit Court granted Ms. Cunningham's oral motion and resentenced Petitioner to the same sentence as previous imposed. (Id., p. 29.)

On July 1, 2008, Petitioner, acting *pro se*, filed with the West Virginia Supreme Court a Motion for Extension of Time concerning the filing of his Petition for Appeal. (Document No. 13-5.) On September 4, 2008, the West Virginia Supreme Court granted Petitioner's Motion and remanded the case to the Circuit Court for resentencing and, if appropriate, appointment of counsel. (Document No. 13-5.) On September 8, 2008, Petitioner, by counsel, Ms. Cunningham, filed his Petition for Appeal. (Document No. 14-3.) In his appeal, Petitioner asserted the following assignments of error:

1.  The trial court committed plain error when instructing the jury on the offense of attempted murder in the first degree. The jurors were erroneously instructed to infer intent from the use of a deadly weapon and to infer that David Eilola intended his acts as well as the natural and probable consequences of those acts.

2.  The trial court admitted prejudicial bad-act evidence over defense objection. There was no limiting instruction contemporaneous to the introduction of the evidence. There was no cautionary instruction in the charge to the jury. There is, however, abuse of discretion and clear error.

3.  The trial court committed reversible error by denying David Eilola's Motion for Judgment of Acquittal on the charge of attempted arson. The state failed to have its physical evidence scientifically analyzed. The judge

(Document No. 13-3.)

considered inadmissible lay opinion testimony as proof.

4.      The trial court's sentencing order unconstitutionally deprives David Eilola of the equal protection of law. If this Court does not modify syllabus point six of <u>State v. Middleton</u>, indigent defendants in West Virginia will wait longer to appear before the Parole Board than defendants who can afford to post pre-trial bond.

(<u>Id.</u>)

On September 22, 2008, the Circuit Court conducted a hearing for purposes of resentencing and the possible appointment of new counsel pursuant to the West Virginia Supreme Court's Order. (Document No. 13-4.) At the hearing, Ms. Cunningham notified the Court that Petitioner's Petition for Appeal was timely filed but Petitioner was unhappy that she would not seek monetary damages in the Petition for Appeal. (<u>Id.</u>, pp. 2 – 5.) Ms. Cunningham provided the Circuit Court with a postage marked envelope from the West Virginia Supreme Court, which evidenced that she filed the Petition for Appeal prior to receiving the West Virginia Supreme Court's Order dated September 4, 2008 granting Petitioner's *pro se* Motion for an Extension of Time. (<u>Id.</u>, p. 12.) After finding irreconcilable differences, the Circuit Court relieved Ms. Cunningham as counsel and appointed new counsel for purposes of representing Petitioner on direct appeal. (<u>Id.</u>, pp. 12 – 13.) The Circuit Court then addressed the issue of resentencing. (<u>Id.</u>, pp. 8 – 10.) Despite the West Virginia Supreme Court's Order directing the Circuit Court to resentence Petitioner, Petitioner objected to resentencing and argued that the Circuit Court would be committing fraud if the Court resentenced him. (<u>Id.</u>) Over Petitioner's objections and pursuant to the West Virginia Supreme Court's Order, the Circuit Court resentenced Petitioner for purposes of appeal. (<u>Id.</u>, pp. 10 – 11.) On September 24, 2008, Ms. Cunningham filed the amended Petition for Appeal that corrected a typographical error. [2]

---

[2] During the September 22, 2008 hearing, Ms. Cunningham acknowledged that Petitioner

(Document No. 13-3 and 13-4.) On December 10, 2008, Petitioner was again resentenced for the purposes of appeal.

On December 15, 2008, Petitioner filed in the West Virginia Supreme Court a *pro se* "Emergency Motion to Dismiss Conviction and Sentence." (Document No. 14-1.) In his *pro se* Motion, Petitioner expressed his dissatisfaction with prior counsel Ms. Cunningham, criticized the Circuit Court for praising her at the March 7, 2008 hearing, alleged the Circuit Court bullied him when the Circuit Court warned Petitioner as to the effect his objection to resentencing would have on his right to appeal, and insisted that "[w]ithout an appeal [his] sentence and conviction [were] unenforceable." (Id., pp. 1 – 4.) By Order entered on February 5, 2009, the West Virginia Supreme Court construed the above motion as a Petition for Writ of Mandamus and denied the Petition. (Document No. 14-2.)

On June 16, 2009, Petitioner, by his newly appointed counsel, Mr. Edward L. Bullman, filed his second Petition for Appeal.[3] (Document No. 13-1.) In his Petition, Petitioner asserted the following:

1.  Whether convictions for the offenses of attempted first degree murder and malicious wounding under the facts of this case violated the state and federal prohibitions against double jeopardy.

2.  Whether there was sufficient evidence to support a verdict of guilty for attempted first degree murder.

3.  Whether refusing to give the petitioner credit for time served prior to conviction on his parole eligibility violates the constitutional guarantees of equal protection under the law.

correctly pointed out a topographical error in the Petition for Appeal. Ms. Cunningham stated that she would correct the error and re-file the Petition. Although the Circuit Court relieved Ms. Cunningham as counsel during the hearing, the Court directed Ms. Cunningham to go forward with filing the corrected Petition for Appeal.

[3] Ms. Cunningham filed Petitioner's first Petition for appeal on September 8, 2008. (Document No. 14-3.)

(Id.) On June 23, 2009, the West Virginia Supreme Court refused Petitioner's first Petition for Appeal as moot based upon the filing of the second Petition for Appeal filed by Mr. Bullman. (Document No. 14-4.)

On December 3, 2009, Petitioner filed in the West Virginia Supreme Court a *pro se* Petition for Writ of Mandamus. (Document No. 14-5.) In his Petition, Petitioner requested that the Court "acknowledge the following Assignment of Error in the State of West Virginia's Response to Petitioner's Petition for Appeal and to allow said Petition for Appeal to be amended with the following facts as appropriate." (Id.) As the Assignment of Error, Petitioner argued that he should have only been convicted of malicious assault and not attempted first degree murder. (Id.) By Order entered on February 11, 2010, the West Virginia Supreme Court summarily refused Petitioner's *pro se* Petition for Writ of Mandamus. (Document No. 15-1.)

On November 23, 2010, the West Virginia Supreme Court reversed Petitioner's Sentencing Order and remanded the case to the Circuit Court with "directions to adjust [Petitioner's] effective sentencing date to March 29, 2006, the date [Petitioner] was first incarcerated on these charges while awaiting trial, to give him credit for 495 days toward his parole eligibility date." State v. Eilola, 226 W.Va. 698, 704 S.E.2d 698 (2010).[4] By Order entered on January 24, 2011, the Circuit Court amended Petitioner's Sentencing Order in

---

[4] The West Virginia Supreme Court stated as follows:

> [T]o correct the apparent confusion caused in our prior opinions in *Scott*, *Echard*, and *Middleton*, and to resolve the issue presented by the Appellant for future cases, we now expressly hold that for purposes of calculating a defendant's parole eligibility date, credit for time served by the defendant prior to being sentenced should be applied to the aggregated minimum term of all the consecutive sentences combined. To the extent that language in *State v. Middleton*, 220 W.Va. 89, 640 S.E.2d 152 (2006), mandates that the period of time served during presentence incarceration be credited only against the aggregated maximum term of the consecutive sentences, it is hereby overruled.

compliance with the West Virginia Supreme Court's Opinion. (Document No. 15-2.)

**2.      First Section 2254 Petition:**

On August 13, 2008, Petitioner, acting *pro se*, his first Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody. <u>Eilola v. Waid</u>, Civil Action No. 2:08-00991, Document No. 1. In his Petition, Petitioner alleges the following grounds for *habeas* relief: (1) "State of West Virginia has denied me an appeal in a timely manner;" (2) "Lack of evidence;" (3) "Prosecutor used 'everything' as definition of overt act puts me in double jeopardy of everything charged;" and (4) Ineffective counsel. <u>Id.</u> By Proposed Findings and Recommendation entered on August 26, 2008, United States Magistrate Judge Mary E. Stanley recommended that Petitioner's Petition be dismissed for failure to exhaust. <u>Id.</u>, Document No. 4. By Memorandum Opinion and Order entered on December 10, 2008, the District Court adopted Judge Stanley's recommendation and dismissed Petitioner's Petition without prejudice. <u>Id.</u>, Document Nos. 8 and 9.

**3.      First State *Habeas* Petition:**

On October 26, 2010, Petitioner, acting *pro se*, filed his Petition for Writ of *Habeas Corpus* in the Circuit Court of Kanawha County. (Document No. 15-3.); <u>Eilola v. Hoak</u>, Case No. 10-MISC-519 (Cir. Ct. Kanawha Co. Nov. 5, 2010). In his Petition, Petitioner asserted the following grounds for relief:

1.      Conviction obtained by violation of the protection of double jeopardy between attempted first degree murder and malicious assault.

2.      Conviction obtained by violation of the protection of double jeopardy between attempted first degree murder and forth degree arson.

3.      Conviction obtained by violation of the protection of double jeopardy between attempted first degree murder and violation of a domestic protection order.

4. Claims of prejudicial statements by prosecutor.

5. Consecutive sentence for same transaction.

6. Claims of prejudicial statements by Judge.

7. Instruction to the jury.

8. Sufficiency of evidence.

9. Falsification of a response and/or transcript by prosecutor.

10. Ineffective assistance of trial counsel.

11. Denial of effective assistance of appeal counsel.

12. Denial of effective assistance of appeal counsel.

13. Denial of effective assistance of appeal counsel.

14. Denial of right to appeal.

15. Trial court lacked jurisdiction.

16. Conspiracy to commit fraud.

17. Dereliction by State in appeal process.

18. Cruel & Unusual Punishment.

(Id., pp. 5 – 11.) By Memorandum Opinion and Order entered on November 5, 2010, the Circuit Court summarily dismissed Petitioner's Petition without prejudice. (Document No. 15-4.)

**4. Second State *Habeas* Petition:**

On February 2, 2011, Petitioner, acting *pro se*, filed his second Petition for Writ of *Habeas Corpus* in the Circuit Court of Kanawha County. Eilola v. Hoak, Case No. 11-MISC-74 (Cir. Ct. Kanawha Co. Feb. 16, 2011); (Document No. 15-3.) In his second Petition, Petitioner asserted nearly identical claims to those asserted in his first State *habeas* Petition. (Id., pp. 6 – 12.) Specifically, Petitioner's second *habeas* Petition was identical except that Petitioner added a

claim of "double jeopardy between attempted murder and battery" and "improper jury." (Id.) By Memorandum Opinion and Order entered on February 16, 2011, the Circuit Court summarily dismissed Petitioner's Petition without prejudice. (Document No. 16-1.) Citing Rule 4(c) of the Rule Governing Post-Conviction Habeas Corpus Proceedings in West Virginia, the Circuit Court determined that Petitioner's Petition contained "mere recitation of grounds without adequate factual support" and failed to demonstrate that Petitioner was entitled to *habeas* relief. (Id.)

On June 14, 2011, Petitioner appealed the denial to the West Virginia Supreme Court of Appeals. (Document No. 16-2.) Petitioner asserted the following assignments of error:

1.  The Circuit Court failed to make specific findings of fact and conclusions of law for each issued raised in Appellant's habeas corpus per § 53-4A-7(c) (1994) and the Order from the Circuit Court clearly shows the Court used § 53-4-1 for review rather than the current § 53-4A-1, and as such the Judge has not maintained a professional competence in the law and as we go back through the records we find this is not an isolated incident and that the Kanawha County Justice Systems is truly a hostile environment for this Appellant;

2.  [On] March 7, 2008, the Kanawha County Circuit Court circumvented West Virginia Supreme Court of Appeals Rules of Appellate Procedure, The Judicial Code of Ethics, Trial Court Rules, The United States Constitution, and The West Virginia Constitution by:

    a.  resentencing this Appellant without an order from this Court;
    b.  threatening and bullying this Appellant;
    c.  [failing to] give notice of the resentencing;
    d.  [failing to] read the charges;
    e.  [failing to] allow this Appellant to allocate;
    f.  [failing to] read the sentence;
    g.  [failing to] give the Appellant his right to appeal;
    h.  [failing to] hear this Appellant's pro se question 'What is the Law?;'
    i.  [failing to] hear this Appellant out, as he was often cut off, by the Court;
    j.  [failing to] hear this Appellant's pro se remark that what the Court is doing now is exactly what this Appellant thought he could do, meaning, appointed appeal counsel failed to put forth an appeal and has asked the lower court to allow her to do it again without following proper procedure and this Appellant wants to start the

appeal process with the Family Court who illegally granted a Protection Order;

      k.      this Appellant was denied an appeal from August 9, 2007 to March 7, 2008, due to the appointed counsel's failure to perfect an appeal in the time frame given by the Legislature as evidence from the resentencing for purposes of appeal;

      l.      the trial court showed bias for counsel;

      m.     the trial court showed prejudice against this Appellant.

3.      [On] September 22, 2008, the Kanawha County Circuit Court did not care if it or the West Virginia Supreme Court of Appeals committed fraud by resentencing this Appellant . . . ;

4.      [On] December 9, 2008, resentencing was again (a) without order from this Court, (b) no Notice of Hearing was given, [and] (c) no appeal rights given.

5.      [On] January 18, 2011, the Circuit Court was again given the chance to correct the wrongs done at the March 7, 2007 hearing, but failed to do so.

(Id.) By Memorandum Decision entered on October 19, 2012, the West Virginia Supreme Court of Appeals affirmed the Circuit Court's order denying Petitioner's *habeas* petition.[5] Eilola v. Haines, 2012 WL 5232258 (W.Va. Oct. 19, 2012).

**5.      Third State *Habeas* Petition:**

On November 16, 2012, Petitioner, acting *pro se*, filed his third Petition for Writ of *Habeas Corpus* in the Circuit Court of Kanawha County. (Document Nos. 16-3, 16-4, 16-5, 16-6, and 16-7.); Eilola v. Mirandy, Case No. 12-MISC-603 (Cir. Ct. Kanawha Co. Dec. 13, 2012). Except for excluding his claim of "improper jury," Petitioner asserted the same claims as

---

[5]  The West Virginia Supreme Court stated as follows:

On Appeal, petitioner argues that the circuit court lacked the authority and/or jurisdiction to hold the hearings, where he was re-sentenced for purposes of appeal and where the circuit court implemented this Court's mandate for Eilola, *supra*. As the respondent warden points out, it is somewhat peculiar for petitioner to make these arguments given that when his appeal was heard in *Eilola*, petitioner obtained partial relief.

*Eiloa*, 2012 WL 5232258 at *2.

asserted in his second State Petition. (Document No. 16-7, pp. 16 – 20.) Petitioner included multiple pages of supporting factual material and Exhibits with his Petition. (Document Nos. 16-3, 16-4, 16-5, 16-6, and 16-7.) By Memorandum Opinion and Order entered on December 13, 2012, the Circuit Court summarily dismissed Petitioner's Petition without prejudice. [6] (Document No. 16-8, p. 5.) On January 7, 2013, Petitioner appealed the denial to the West Virginia Supreme Court of Appeals. (Document No. 16-9.) By Order entered on June 18, 2013, the West Virginia Supreme Court directed the Circuit Court to "appoint an attorney to aid the petitioner and to conduct an omnibus *habeas corpus* proceeding. (Id.)

By Order filed on August 23, 2013, the Circuit Court appointed Mr. Matthew A. Victor as *habeas* counsel and the *habeas* action was assigned the previous case number of 11-MISC-74. (Document No. 16-8, p. 5, Document No. 22-10, p. 4, and Document No. 25-7.) On October 16, 2013, the Circuit Court conducted a hearing pursuant to Losh v. McKenzie, 277 S.E.2d 606 (W.Va. 1981). (Document No. 22-10, p. 4 and Document No. 25-16.) On December 23, 2013, Petitioner, by counsel, filed a "Motion for Disqualification of Presiding Judge" arguing that Circuit Court Judge Charles E. King, Jr. should be disqualified because "the current action has already been prejudged and the result thereof has already been pre-determined." (Document No. 16-8 and 25-8.) On January 8, 2014, Judge King submitted a request to the West Virginia Supreme Court based upon the Motion to Disqualify. (Document No. 1, p. 27, Document No. 22-10, p. 4, and Document No. 25-9.) On January 9, 2014, the West Virginia Supreme Court determined there was insufficient evidence to justify a disqualification of Judge King.

---

[6] The parties agree that the third dismissal order is missing from the record. (Document No. 1, p. 20 and Document No. 12, p. 10, fn. 7.) The parties, however, do not dispute that the third dismissal order is materially identical to those dismissing the first two State *habeas* petitions. (*Id.* and Document No. 16-8, p. 5.)

(Document No. 25-10.) An additional <u>Losh</u> hearing was conducted on February 12, 2014. (Document No. 22-10, p. 5 and Document No. 25-11.)

On May 6, 2014, Mr. Victor filed Petitioner's "Amended Petition for Writ of Habeas Corpus" asserting the following assignments of error:

1. Under the facts and circumstances of the case, the Petitioner's convictions for the offenses of Attempt First Degree Murder and Malicious Wounding violated the State and Federal Constitutional prohibitions against Double Jeopardy;

2. There was insufficient evidence to support a verdict of guilty for Attempted First Degree Murder;

3. There was insufficient evidence to convict the Petitioner of Arson in the Fourth Degree;

4. The Petitioner received ineffective assistance of counsel;

5. The Petitioner was deprived of his due process rights to notice of the charges brought against him due to the trial court's denial of the bill of particulars;

6. The Petitioner was deprived of his due process right to be tried by a fair and impartial jury for failure to exclude from the petit jury a juror who expressed bias and prejudice against the Petitioner;

7. Cumulative error in the Circuit Court proceedings deprived the Petitioner his right to due process of law.

(Document Nos. 25-12 and 25-13.) The State subsequently filed a motion for extension of time to file a response, which the Circuit Court granted on August 7, 2014. (Document No. 22-10, p. 5 and Document No. 25-14.) On September 5, 2014, the State filed its Answer and Response to Petitioner's amended petition. (Document No. 22-10, p. 5 and Document No. 25-15) The Circuit Court attempted to conduct Petitioner's omnibus hearing on November 13, 2014. (Document No. 25-17.) During the hearing, Mr. Victor asked "for a brief continuance of the habeas omnibus hearing [because] Mr. Eilola advises me he is not prepared for this type of hearing today." (<u>Id.</u>)

Mr. Victor explained that Mr. Eilola "was under the impression that today's hearing was a status conference [and] [h]e wishes me to call additional witnesses." (Id.) The Circuit Court granted the requested continuance and stated that "when you're ready to go to a hearing Mr. Eilola, and/or Mr. Victor, call me and I'll schedule it." (Id.) On January 15, 2015, Mr. Victor filed a Motion to Withdraw as Counsel stating "total and irreversible breakdown in the attorney-client relationship." (Document No. 25-18)

By Order filed on February 12, 2015, the Circuit Court granted Mr. Victor's motion and appointed Mr. Herbert Hively as *habeas* counsel. (Document No. 25-19.) On March 4, 2015, Petitioner filed a *pro se* Motion to Dismiss Mr. Hively as counsel stating there was "a total and irreversible breakdown in the attorney-client relationship." (Document No. 25-20.) By Order entered on April 16, 2015, the Circuit Court denied Petitioner's Motion to Dismiss Mr. Hively as counsel. (Document No. 22-10, p. 6 and Document No. 25-21.)

On November 2, 2015, Petitioner filed in the West Virginia Supreme Court a *pro se* "Petition for Writ of Prohibition and Correction of Illegal Re-Sentencing Hearing from a Court Outside Kanawha County with Appointed Counsel from Outside Kanawha County." (Document No. 2, p. 28, Document No. 16-10, and Document No. 25-22.) On December 21, 2015, the West Virginia Supreme Court denied Petitioner's *pro se* Petition for Writ of Prohibition noting that Petitioner had a lawyer representing him in his State *habeas* proceedings and finding that the Court "cannot accept *pro se* filing when an individual is represented by counsel." (Document No. 16-10 and Document No. 25-23.) The West Virginia Supreme Court further stated "[i]f the petitioner disagrees with the decision not to docket his *pro se* petition for writ of prohibition, the petitioner may file a motion on or before January 22, 2016, directing the Clerk of Court to docket this matter." (Id.) On February 3, 2016, Petitioner filed in the West Virginia Supreme Court a

*pro se* "Motion to Docket." (Document No. 2, p. 28 and Document No. 25-24.) By Order entered on March 2, 2016, the West Virginia Supreme Court denied Petitioner's Motion to Submit *Pro Se* Filings and refused to docket Petitioner's *pro se* Petition for Writ of Prohibition. (Document No. 25-25.) Petitioner's *habeas* proceeding are currently pending in the Circuit Court.

**6.      Section 2254 Petition:**

On December 1, 2016, Petitioner, acting *pro se*, filed his Application under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody and "Motion for Acceptance of 2254."[7] (Document Nos. 1 and 2.) In his "Motion for Acceptance of 2254," Petitioner argues that "per Section 2254(b)(1)(B)(ii) circumstances exist that render the state's habeas corpus process ineffective to protect the rights of this United States citizen." (Id.) Although Petitioner indicates that *habeas* proceedings are ongoing in Kanawha County Circuit Court, Petitioner complains that he "will not be given a full, fair, and impartial omnibus hearing." (Id.) Petitioner, therefore, appears to argue that he should be excused from exhausting this State remedies. (Id.) As grounds for *habeas* relief, Petitioner asserts the following:

1.      Double jeopardy between attempted first degree murder and malicious assault, consecutive sentences.

2.      Double jeopardy between attempted first degree murder and fourth degree arson.

3.      Double jeopardy between first degree murder and violation of a protection order.

4.      Double jeopardy between attempted first degree murder and battery.

5.      Dereliction by the West Virginia Justice System.

6.      Lack of evidence to support conviction of attempted first degree murder.

---

[7] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

7.     Lack of evidence to support conviction of fourth degree arson.

8.     Ineffective assistance of trial counsel.

9.     Ineffective assistance of appeal counsel.

10.    Ineffective assistance of habeas corpus counsel.

(Document No. 1, pp. 10 – 37.)

By Order entered on December 6, 2016, the undersigned construed Petitioner's "Motion for Acceptance of 2254" as a Memorandum in Support. (Document Nos. 7 and 8.) By separate Order also entered on December 6, 2016, the undersigned granted Petitioner's Application to Proceed Without Prepayment of Fees or Costs and directed Respondent to file a Response to Petitioner's Petition. (Document No. 6.)

On January 23, 2017, Respondent filed his Answer, Motion to Dismiss, and Memorandum in Support thereof with Exhibits. (Document Nos. 10 - 16.) Specifically, Respondent argues that Petitioner's Petition be dismissed without prejudice for failure to exhaust existing State court remedies as required under 28 U.S.C. § 2254(b)(1)(A). (Document No. 11 – 12.) Respondent further argues that Petitioner "has not demonstrated that his case presents the 'high exceptional circumstances' justifying deviation from Section 2254(b)(1)'s exhaustion requirements." (Id.)

As Exhibits, Respondents attach the following: (1) A copy of the Petitioner's Petition for Appeal as filed with the West Virginia Supreme Court on June 16, 2009 (Document No. 13-1.); (2) A copy of notice that Twyla Donathan was the court reporter for the pretrial hearings, jury trial, and post-trial hearings (Document No. 13-2.); (3) A copy of "Defendant's Motion to Dismiss Counsel" as filed in the Circuit Court on March 25, 2008 (Document No. 13-3.); (4) A

copy of transcripts from the September 22, 2008, hearing regarding Petitioner's Motion for Resentencing and Appointment of New Counsel (Document No. 13-4.); (5) A copy of an Order from the West Virginia Supreme Court dated September 4, 2008, granting Petitioner's *pro se* Motion for Extension of Time and directing the Circuit Court to resentence Petitioner (Document No. 13-5.); (6) A copy of Petitioner's *pro se* "Emergency Motion to Dismiss Conviction and Sentence" as filed with the West Virginia Supreme Court on December 15, 2008 (Document No. 14-1.); (7) A copy of the West Virginia Supreme Court's Order dated February 5, 2009 construing Petitioner's *pro se* Emergency Motion to Dismiss as a Petition for Writ of Mandamus and denying such (Document No. 14-2.); (8) A copy of Petitioner's Petition for Appeal as filed on September 8, 2008 (Document No. 14-3.); (9) A copy of the West Virginia Supreme Court's Order dated June 23, 2009, denying Petitioner's first Petition for Appeal as moot (Document No. 14-4.); (10) A copy of Petitioner's *pro se* "Writ of Mandamus" as filed with the West Virginia Supreme Court on December 3, 2009 (Document No. 14-5.); (11) A copy of the West Virginia Supreme Court's Order dated February 11, 2010, denying Petitioner's *pro se* Petition for Writ of Mandamus (Document No. 15-1.); (12) A copy of Petitioner's Amendment Sentencing Order entered on January 24, 2011 (Document No. 15-2.); (13) A copy of Petitioner's State *habeas* Petition as filed in Case No. 10-MISC-519 (Document No. 15-3.); (14) A copy of the Circuit Court's "Memorandum Opinion and Order" denying Petitioner's *habeas* Petition in Case No. 2010-MISC-519 (Document No. 15-4.); (15) A copy of Petitioner's second State *habeas* Petition as filed in Case No. 11-MISC-74 (Document No. 15-5.); (16) A copy of the Circuit Court's "Memorandum Opinion and Order" denying Petitioner's *habeas* Petition in Case No. 11-MISC-74 (Document No. 16-1.); (17) A copy of Petitioner's Petition for Appeal concerning the Circuit Court's denial of *habeas* relief (Document No. 16-2.); (18) A

copy of Petitioner's third State *habeas* Petition as filed in Case No. 11-MISC-74 (Document Nos. 16-3, 16-4, 16-5, 16-6, and 16-7.); (19) A copy of Petitioner's "Motion for Disqualification of Presiding Judge" (Document No. 16-8.); (20) A copy of the West Virginia Supreme Court's Order dated June 18, 2013 directing the Circuit Court to appointed *habeas* counsel and conduct an omnibus hearing (Document No. 16-9.); (21) A copy of Petitioner's "Writ of Prohibition and Correction of Illegal Re-Sentencing Hearing, from a Court Outside Kanawha County with Appointed Counsel from Outside Kanawha County" filed on November 2, 2015 (Document No. 16-10.); and (22) A copy of the West Virginia Supreme Court's Order dated December 21, 2015, refusing to docket Petitioner's *pro se* writ of prohibition because Petitioner was represented by counsel (Document No. 16-11.)

On January 24, 2017, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondent's Motion to Dismiss. (Document No. 17.) On February 28, 2017, Petitioner filed his Response in Opposition. (Document No. 18.) Petitioner acknowledges that he has not exhausted eight of his ten claims. (<u>Id.</u>, pp. 1 - 2.) Petitioner, however, continues to argue that "per Section 2254(b)(1)(B)(ii), circumstances exist that render the state's habeas corpus process ineffective to protect the rights of this United States citizen." (<u>Id.</u>) Petitioner first explains that inordinate delay occurred as a result of Ms. Cunningham's failure to file a timely Petition for Appeal, which resulted in his resentencing. (<u>Id.</u>, p. 2.) Petitioner disputes that he instructed Ms. Cunningham to not to file the Petition for Appeal if certain issues were not included in the Petition. (<u>Id.</u>) Second, Petitioner argues that if the Court reviews the full transcript of the March 7, 2008, hearing, the Court will see how Petitioner was bullied, manipulated, and not allowed a full and fair hearing. (<u>Id.</u>, pp. 3 – 4.) Petitioner argues that he "did not receive a full, fair, and impartial hearing to

dismiss his counsel as the judge did not care why the appeal was not done, no 'good cause' was shown." (Id., p. 4.) Since counsel failed to file a timely Petition for Appeal, Petitioner argues that the Circuit Court should have released him from custody instead of resentencing him. (Id., pp. 4 – 6.) Petitioner explains that the Circuit Court threatened him because the Circuit Court stated that his case was "done" unless he was resentenced for purposes of restarting the clock for filing a direct appeal. (Id.) Petitioner further complains that the Circuit Court usurped the West Virginia Supreme Court's power when the Circuit Court resentenced Petitioner on March 7, 2008. (Id., pp. 6 – 7.) Petitioner complains that the West Virginia Supreme Court is aware that the Circuit Court usurped the Supreme Court's power, but the Court has failed to take any action. (Id., pp. 7 - 11.) Petitioner further complains the West Virginia Supreme Court has failed to address the merits of his claims by filing "findings of facts and conclusion of law." (Id., p. 8.) Finally, Petitioner complains that he has been appointed multiple attorneys, but all refuse to assert his "constitutional" claims. (Id., p. 10.)

Respondent filed his Reply on March 6, 2017. (Document No. 19.) Respondent contends that Petitioner "has not carried his burden of demonstrating that his petition presents the 'highly exceptional circumstances' justifying circumvention of section 2254's exhaustion requirement." (Id., p. 2.) Respondent explains that "nothing in the record suggests that the Circuit Court bullied Mr. Eilola, threatened him, denied him the opportunity to be heard, or express bias towards him." (Id.) First, Respondent argues there is no merit in Petitioner's claim that the Circuit Court lacked jurisdiction after the time limit for appealing his conviction elapsed and Petitioner was entitled to immediate release. (Id.) Second, Respondent contends that the Circuit Court's initial denial of Petitioner's request for the appointment of new counsel does not demonstrate bias against him. (Id., pp. 2 – 3.) Finally, Respondent claims that Petitioner has "failed to establish

that the final adjudication of his claims in State Court will not be 'full, fair and impartial." (Id., p. 3.)

On March 15, 2017, Petitioner filed his Motion to File Final Response and his "Final Response." (Document Nos. 20 and 21.) In his "Final Response," Petitioner continues to argue that the Circuit Court "usurped the power of the WVSCA by imposing a resentencing for purposes of appeal that 'only' the West Virginia Supreme Court of Appeals could extend the time for appeal." (Document No. 21.) Second, Petitioner contends that Respondent "has given this Court 'no rational based explanation' by which this Court could refuse § 2254(b)(1)(B)(ii) circumstances exists that render state's habeas corpus process ineffective." (Id.) Third, Petitioner continues to argue that the West Virginia Supreme Court has failed to properly address his claims by "giving findings of fact and conclusions of law." (Id.) Finally, Petitioner argues that the Circuit Court Judge should have disqualified himself from proceeding over Petitioner's *habeas* case because he was also the trial judge in the underlying criminal proceedings. (Id.)

By Order entered on March 17, 2017, the undersigned directed Respondent to file a Supplemental Response addressing whether there has been inordinate delay in Petitioner's State *habeas* proceedings since June 18, 2013. (Document No. 23.) On April 10, 2017, Petitioner filed his "Response to Respondent's Supplemental Documentation" reasserting the same arguments as set forth in his "Final Response." (Document No. 24.) On April 17, 2017, Respondent filed his Supplement Response arguing that the Court should not excuse Petitioner's failure to exhaust because there had been no inordinate delay. (Document No. 25.) Respondent explained that the "four-year pendency of Mr. Eilola's State-habeas proceedings is largely driven by his own *pro se* litigation decisions and dissatisfaction with his appointed counsel." (Id.)

As Exhibits, Respondent attaches the following: (1) A copy of Petitioner's *pro se*

"Petition for Habeas Corpus Relief and Appointment of Counsel" as filed in the Circuit Court on November 16, 2012 (Document Nos. 25-1, 25-2, 25-3, 25-4, and 25-5.); (2) A copy of the West Virginia Supreme Court's Order dated June 18, 2013 directing the Circuit Court to appointed *habeas* counsel and conduct an omnibus hearing (Document No. 25-6.); (3) A copy of the Circuit Court's Order dated August 22, 2013, appointing Mr. Victor as *habeas* counsel (Document No. 25-7.); (4) A copy of Petitioner's "Motion for Disqualification of Presiding Judge" filed by Mr. Victor on December 23, 2013 (Document No. 25-8.); (5) A copy of a letter from Circuit Court Judge King addressed to the Chief Justice Davis dated January 8, 2014, notifying the West Virginia Supreme Court of Petitioner's Motion to Disqualify (Document No. 25-9.); (6) A copy of an Administrative Order dated January 9, 2014, from the West Virginia Supreme Court denying Petitioner's Motion for Disqualification (Document No. 25-10.); (7) A copy of a Notice of Hearing scheduling a Losh Hearing for February 12, 2014 (Document No. 25-11.); (8) A copy of Petitioner's "Amended Petition for Writ of Habeas Corpus" filed on May 6, 2014 (Document Nos. 25-12 and 25-13.); (9) A copy of the State's "Motion to Continue Response to Amended Habeas Corpus" filed on August 7, 2014 (Document No. 25-14.); (10) A copy of the State's "Answer to Petitioner's Amended Petition for a Writ of Habeas Corpus" filed September 5, 2014 (Document No. 25-15.); (11) A copy of a Notice of Hearing scheduling a <u>Losh</u> Hearing for October 16, 2013 (Document No. 25-16.); (12) A copy of transcripts from the continuance of the omnbuis *habeas* hearing scheduled for November 13, 2014 (Document No. 25-17.); (13) A copy of Mr. Victor's "Motion to Withdraw as Counsel" (Document No. 25-18.); (14) A copy of the Circuit Court's Order dated February 12, 2015, granting Mr. Victor's "Motion to Withdraw as Counsel" and appointing Mr. Herbert L. Hively as *habeas* counsel (Document No. 25-19.); (15) A copy of a letter dated March 4, 2015, from Mr. Hively to Judge King and attaching a copy of

Petitioner's "Motion to Dismiss Counsel" (Document No. 25-20.); (16) A copy of the Docket Sheet from Case No. 11-MISC-74 (Document No. 25-21.); (17) A copy of Petitioner's *pro se* "Writ of Prohibition and Correction of Illegal Re-Sentencing Hearing from a Court Outside Kanawha County with Appointed Counsel from Outside Kanawha County" dated November 2, 2015 (Document No. 25-22.); (18) A copy of an Order dated December 21, 2015, from the West Virginia Supreme Court refusing to docket the *pro se* writ of prohibition and providing a copy to Mr. Hively (Document No. 25-23.); (19) A copy of the Docket Sheet from the West Virginia Supreme Court (Document No. 25-24.); and (20) A copy of an Order dated March 2, 2016, from the West Virginia Supreme Court refusing Petitioner's Motion to Submit *Pro Se* Filings (Document No. 25-25.).

On May 31, 2017, Petitioner filed his Reply to Respondent's Supplemental Response. (Document No. 28.) First, Petitioner argues that the State Court has caused delay of four years in his *habeas* proceedings. (Id., p. 1.) Second, Petitioner continues to argue that he should be excused from the exhaustion requirement based upon "extreme dereliction by the State." (Id., pp. 2 – 3.) Third, Petitioner argues that Mr. Victor acted ineffectively by failing to ensure that Mr. Eilola was prepared and ready to proceed with the omnibus hearing scheduled for November 13, 2014. (Id., p. 3.) Petitioner acknowledges that he did not wish to proceed with the omnibus hearing because he wanted to call additional witnesses, who were unavailable on November 13, 2014. (Id., pp. 3 - 4.) Fourth, Petitioner appears to argue that Mr. Hively is acting ineffectively based upon Mr. Hively's alleged failure to respond to the "last two letters from [Petitioner]." (Id., p. 5.) Fifth, Petitioner argues that it is unreasonable to think Petitioner can get a "full, fair, and impartial evidentiary hearing from the presiding judge" that incorrectly resentenced Petitioner for purposes of appeal. (Id., pp. 5 – 6.) Sixth, Petitioner continues to argue Circuit

Court Judge King improperly usurped the authority of the West Virginia Supreme Court when the Circuit Court resentenced Petitioner for purposes of reinstating his appeal rights. (Id., pp. 6 – 8, 12 - 15.) Seventh, Petitioner continues to argue that Ms. Cunningham acted ineffectively and delayed the failing of his direct appeal. (Id., pp. 9 – 12.) Finally, Petitioner argues that he is entitled to *habeas* relief because the jury was given an improper instruction on first-degree murder and Petitioner was subjected to double jeopardy. (Id., pp. 15 – 28.)

## THE APPLICABLE STANDARD

In Section 2254 proceedings, the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to motions to dismiss. See Walker v. True, 399 F.3d 315, 319, n. 1. (4th Cir. 2005); also see Rules Governing Section 2254 Cases in the United States District Courts, Rule 12 (The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the *habeas* rules, may be applied to Section 2254 proceedings). A motion to dismiss a Section 2254 petition under Rule 12(b)(6) "tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true." Walker v. Kelly, , 139 (4th Cir. 2009)(citing Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009). The court, however, is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014)(quoting Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006). When assessing whether the Section 2254 petition states a claim for relief, the court must consider "the face of the petition any attached exhibits." Wolfe, 565 F.3d at 169 (internal quotations omitted). The court may also consider such exhibits and matters of public record, such as documents from prior state court proceedings, in conjunction with a Rule 12(b)(6) motion without having to convert the motion to one for

summary judgment. <u>Walker</u>, 589 F.3d at 139.

## ANALYSIS

1.      **Failure to Exhaust:**

In the Motion to Dismiss, Respondent argues that Petitioner's Petition should be dismissed for failure to exhaust. (Document Nos. 11 and 12.) In Response, Petitioner acknowledges that his eight of his ten claims are unexhausted. (Document No. 18.) Petitioner, however, contends that he should be excused from exhaustion "per Section 2254(b)(1)(B)(ii)." (Document Nos. 18 and 28.)

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that state prisoners must exhaust available state remedies prior to filing a § 2254 petition in federal court. 28 U.S.C. § 2254(b)(1)(A); <u>see also</u>, <u>McDaniel v. Holland</u>, 631 F.Supp. 1544, 1545 (S.D. W.Va. 1986)("A federal court will not entertain a state prisoner's petition for a writ of habeas corpus unless the prisoner has first exhausted available state judicial remedies."). Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in state court, or (2) the Petitioner's claims will be deemed exhausted if no state remedies are currently available. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996). Fair presentation requires the Petitioner to (1) present the same claims (2) to all appropriate state courts. <u>See</u> <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds*, <u>United States v. Barnette</u>, 644 F.3d 192 (4th Cir. 2011). Presentation of the same claim "contemplates that 'both the operative facts and the 'controlling legal principles' 'must be presented to the state court." <u>Id.</u> (quoting <u>Verdin v. O'Leary</u>, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438

(1971)). Although it is unnecessary to cite "book and verse on the federal constitution," "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." See Picard, 404 U.S. at 278, 92 S.Ct. at 514; Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(internal citations omitted); Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000). The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Matthews, supra, 105 at 911. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 886, 130 L.Ed.2d 865 (1995); see also Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004)(stating that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Petitioner must also provide the state court with the facts supporting the claimed constitutional violation and "explain how those alleged events establish a violation of his constitutional rights." Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994). The requirement of presentation of the same claim to all appropriate state courts is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). This requirement is satisfied by

presentation to the state's highest court on either direct or collateral review. Id. at 844, 119 S.Ct. at 1732. In West Virginia, prisoners may exhaust their available State court remedies by the following: (1) stating cognizable federal constitutional claims in a direct appeal to the West Virginia Supreme Court of Appeals; (2) stating cognizable federal constitutional claims in a petition for a writ of *habeas corpus* in a State circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the West Virginia Supreme Court of Appeals; or (3) filing a petition for writ of *habeas* corpus under the West Virginia Supreme Court's original jurisdiction and receiving a dismissal with prejudice.[8] Moore v. Kirby, 879 F.Supp. 592, 593 (S.D.W.Va. 1995); McDaniel v. Holland, 631 F.Supp. 1544, 1545-46 (S.D.W.Va. 1986).

Generally, a federal district court may not review a Section 2254 petition unless there has been "total exhaustion" of the presented issues. Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); also see Preiser v. Rodriguez, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)(When a petitioner fails to exhaust his state court remedies, a federal *habeas* petition should be dismissed.) When a petitioner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the District Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claim claims and proceed with the exhausted claims. Rhines v. Weber, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). "[N]otwithstanding the failure of an applicant to exhaust the

---

[8] An original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the petitioner's state court remedies. *See Moore*, 879 F.Supp. at 593; *McDaniel*, 631 F.Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-09 (4th Cir. 1990)(*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997)).

remedies available in the courts of the state," a district court may deny the unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2); also see White v. Keller, 2013 WL 791008, * 5 (M.D.N.C. March 4, 2013). To be excused from the exhaustion requirement, Petitioner must establish that "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The foregoing statutory exceptions apply "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). "State remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." Ward v. Freeman, 46 F.3d 1129 (4th Cir. 1995)(unpublished table decision); Farmer v. Circuit Court of Md. for Balt. City., 31 F.3d 219, 223 (4th Cir. 1994)("There is . . . authority for treating sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance.").

Courts within the Fourth Circuit have indicated that the "inordinate delay" must be attributable to the state's procedures that infringe on the petitioner's due process right, and not attributable to the petitioner's own actions. See Walkup, 2005 WL 2428163 at 3; also see Tinsley v. Warden, 2016 WL 1625243 (D.S.C. April 21, 2016). The relevant inquiry is whether the delay amounts to a violation of the petitioner's right to due process. See United States v. Brown, 292 Fed.Appx. 250, 252 (4th Cir. 2008)(citing United States v. Johnson, 732 F.2d 379, 381 (4th Cir. 1984)); also see Gary v. Bodison, 2010 WL 2195464 (D.S.C. June 1, 2010)(citing Barry v. Sigler, 373 F.2d 835, 838 n. 4 (8th Cir. 1967)(Federal intervention on the merits is generally warranted only in cases where a delay in state court proceedings amounts to a denial of a petitioner's due process right.) To determine whether a delay amounts to a due process

violation, the Fourth Circuit has adopted the four-factor speedy trial analysis as announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See United States v. Johnson, 732 F.2d 379, 381 (4th Cir. 1984), cert. denied, 469 U.S. 1033, 105 S.Ct. 505, 83 L.Ed.2d 396 (1984). The four-factors are as follows: (1) the length of delay; (2) the reason for the delay, (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Id. No one factor is dispositive; all factors are to be considered together in light of the particular circumstances of the case. Barker v. Wingo, 407 U.S. at 533, 92 S.Ct. at 2194.

First, the undersigned will consider the first Barker factor concerning the length of delay. The record reveals that Petitioner has had post-conviction proceedings pending before the State courts since August 2007. Specifically, Petitioner's State proceedings have included a direct appeal and three State *habeas* petitions. First, Petitioner's pursuit of his direct appeal was ongoing for more than three years (August 9, 2007 – November 23, 2010). Second, Petitioner's first State *habeas* petition was pending before the Circuit Court for less than one month (October 26, 2010 – November 5, 2010). Third, Petitioner's second State *habeas* petition was pending before the State courts for approximately eight months (February 2, 2011 – October 19, 2012). Fourth, Petitioner's third State *habeas* petition had been pending before the State courts for a little more than four years when Petitioner filed his instant Section 2254 Petition (November 16, 2012 – December 1, 2016). Generally, courts find an inordinate delay only when long periods of time have passed. See Brennan v. McGraw, 2012 WL 3656487 (S.D.W.Va. Aug. 24, 2012)(J. Goodwin)(citations omitted)("[D]elay only rises to the level of 'inordinate' in extreme cases."); also see Turner v. Bagley, 401 F.3d 718, 726-27 (6th Cir. 2004)(excusing exhaustion where the petitioner's state direct appeal had been pending for 11 years); Lee v. Stickman, 357 F.3d 338, 341-42 (3rd Cir. 2004)(holding that an 8-year delay in reaching the merits of a post-conviction

27

petition constitute inordinate delay); <u>Mathis v. Hood</u>, 851 F.2d 612, 614 (2nd Cir. 1988)(finding a 6-year delay of direct appeal constitutes inordinate delay); <u>Johnson</u>, <u>supra</u>, 732 F.2d at 382(finding that a 2-year delay in the preparation of transcripts was "in the range of magnitude of delay as a result of which courts have indicated that due process may have been denied"); <u>Gardner v. Plumley</u>, 2013 WL 5999041 (S.D.W.Va. Nov. 12, 2013)(J. Goodwin)(finding inordinate delay where petitioner's state proceedings were pending for nearly 20 years without a decision from the state court); <u>but also see</u> <u>Miller v. McFadden</u>, 2015 WL 846530 (D.S.C. Feb. 26, 2015)(finding no inordinate delay where the time between when the petition was filed and when the Circuit Court issued its Order of Dismissal was approximately 24 months); <u>Cobarruvias v. Cartledge</u>, 2012 WL 6772231, * 2 (D.S.C. Nov. 2012)(finding that 22 months does not qualify as inordinate delay); <u>Short v. Hoke</u>, 2010 WL 2509633 (S.D.W.Va. June 18, 2010)(J. Faber)(finding no inordinate delay based upon petitioner's State petition pending in the circuit court for little more than a year); <u>Walkup v. Haines</u>, 2005 WL 2428163 (S.D.W.Va. Sept. 30, 2005)(J. Faber)(finding a 3 year delay not to be inordinate delay); <u>Gilchrist v. Hagan</u>, 2005 WL 3747428 (D.S.C. March 11, 2005)(finding that "a 16 month wait is not excessive and thus weighs in favor of a finding that there has been no due process violation"); <u>Cook v. Florida Parole and Probation Commission</u>, 749 F.2d 678 (11th Cir. 1985)(finding a three and half year delay in ruling on petitioner's *habeas* petition to be insufficient to justify excusing the exhaustion requirement); and <u>Booker v. Kelly</u>, 636 F.Supp. 319 (W.D.N.Y. 1986)(finding no complete absence of state corrective procedure based upon a three year delay of petitioner's appeal caused by ineffective assistance of counsel). Thus, the undersigned finds that the allege delays in Petitioner's direct appeal and his first and second State *habeas* petitions are not the magnitude of delay that has been determined to be inordinate or a violation of due process. The

undersigned, however, finds that the length of Petitioner's pending third State *habeas* proceeding is approaching the magnitude of delay that has been determined to be inordinate or a violation of due process. The length of delay, however, "is not a determinative factor when some of the delay is attributable to petitioner." Walkup, 2005 WL 2428163 at 3. As stated above, there is no one factor that is dispositive and all factors are to be considered together in light of the particular circumstances of the case. Barker v. Wingo, 407 U.S. at 533, 92 S.Ct. at 2194. Therefore, the undersigned will proceed to consider the remaining Baker factors.

Next, the undersigned will consider the second Barker factor concerning the reason of delay. The undersigned will first consider Petitioner's direct appeal. Although Petitioner's pursuit of his direct appeal was ongoing for approximately three years and three months, the record reveals that a significant part of the delay was attributable to Petitioner. Due to continuous disagreement with appointed counsel, Petitioner was appointed two different attorneys and resentenced three times. It is reasonable that some delay would occur as a result of the appointment of new counsel. Each replacement attorney would need time to obtain and review the file and become familiar with the facts and applicable law. Initially, Petitioner was appointed Ms. Cunningham as counsel. Approximately six months later, Petitioner became dissatisfied Ms. Cunningham's representation and requested the appointment of new counsel. The Circuit Court timely conducted a hearing on Petitioner's motion for new counsel. During the hearing, it was revealed that Ms. Cunningham failed to timely perfect Petitioner's appeal due to a disagreement between Petitioner and Ms. Cunningham regarding the grounds to include in his petition for appeal. After discussion during the hearing, Ms. Cunningham agreed to include a section in the appeal including issues Petitioner wished to assert *pro se*.[9] The Circuit Court then

---

[9] Ms. Cunningham was eventually relieved as counsel because of irreconcilable differences

resentenced Petitioner for the purpose of reinstating his appeal rights. Petitioner, however, objected to the resentencing arguing that the Circuit Court should immediately release him from custody because Petitioner had been denied his right to appeal. Although the Circuit Court and counsel attempted to explain to Petitioner that he had not been denied his right to appeal because resentencing reinstated his appeal rights, Petitioner persisted in his argument for immediate release. This was the beginning of Petitioner's persistent argument that the Circuit Court improperly usurped the West Virginia Supreme Court's authority by resentencing Petitioner instead of ordering Petitioner's immediate release. Petitioner has relentlessly and continuously asserted this frivolous argument since 2008. Petitioner caused further delay by filing several *pro se* documents with the West Virginia Supreme Court challenging the validity of his resentencing and his conviction. Although Petitioner was represented by counsel, Petitioner filed two *pro se habeas* petitions initiating *habeas* proceedings in both Federal and State court while his direct appeal was pending before the West Virginia Supreme Court. Accordingly, the record supports a finding that a significant portion of the delay of Petitioner's direct appeal was attributable to Petitioner's actions. See Gardner v. Plumley, 2013 WL 5999041, * 6 (S.D.W.Va. Nov. 12, 2013)(J. Goodwin)(citations omitted)("The rule excusing exhaustion in cases of inordinate delay is not limited to delays caused by judge, court officials, and prosecutors; it also has been applied to delays caused by court-appointed counsel, which may be 'attributable to the state' as long as 'the petitioner has not personally caused the delays nor condoned them.")

Next, the undersigned will consider the reason for delay in Petitioner's State *habeas* proceedings. Concerning Petitioner's first two State *habeas* petitions, the undersigned notes that

---

regarding issues to assert in Petitioner's direct appeal. Ms. Cunningham advised that Circuit Court that she would not include a frivolous request for monetary damages in Petitioner's direct appeal.

there was no evidence of delay. Petitioner's first State *habeas* petition was resolved in less than a month (October 26, 2010 – November 5, 2010) and his second State *habeas* petition was resolved in approximately eight months (February 2, 2011 – October 19, 2011). Concerning Petitioner's third State *habeas* petition, the undersigned notes that such has been ongoing for more than four years (November 16, 2012 – present). The record, however, reveals that the Circuit Court promptly denied Petitioner's third State *habeas* petition within one month of its filing and Petitioner filed an appeal to the West Virginia Supreme Court. On June 18, 2013, the West Virginia Supreme Court entered an Order remanding the case back to the Circuit Court for the appointment of *habeas* counsel and an omnibus hearing. The foregoing process took approximately seven months, which was a reasonable period of time for the denial of Petitioner's *habeas* petition by the Circuit Court and a resolution of Petitioner's *habeas* appeal by the West Virginia Supreme Court.

Upon remand from the West Virginia Supreme Court, the Circuit Court acted with reasonable promptness and appointed Mr. Victor as *habeas* counsel on August 23, 2013. Between August 23, 2013 and November 13, 2014, Petitioner's *habeas* proceedings moved forward with reasonable speed with the following activity occurring: two Losh hearings were conducted, a motion to disqualify the Circuit Court Judge King was filed by counsel, the West Virginia Supreme Court denied the motion to disqualify Judge King, an amend *habeas* petition was filed by counsel, a Response to the amended *habeas* petition was filed by the State, and an omnibus hearing was started and continued. During the omnibus hearing on November 13, 2014, Mr. Victor, at the insistence of Petitioner, requested a continuance of the hearing. (Document No. 25-17.) In support, Mr. Victor explained to the Circuit Court as follows: (1) "Mr. Eilola advises me he is not prepared for this type of hearing today;" (2) Mr. Eilola "was under the

impression that today's hearing was a status conference;" and (3) Mr. Eilola "wishes me to call additional witnesses." (Id.) The Circuit Court confirmed with Petitioner that he wished to continue the omnibus hearing and Petitioner indicated that he was not prepared to proceed. (Id.) The Circuit Court then instructed Petitioner that "[w]hen you're ready to go to a hearing Mr. Eilola, and/or Mr. Victor, call me and I'll schedule it." (Id.) Less than two months later on January 15, 2015, Mr. Victor filed a motion to withdraw as counsel. The Circuit Court granted Mr. Victor's Motion and appointed Mr. Hively as counsel on February 12, 2015. Less than two months later, Petitioner again requested that new counsel be appointed and the Circuit Court promptly denied the motion. Instead of working with appointed counsel and rescheduling the omnibus hearing with the Circuit Court, Petitioner proceeded to cause further delay by filing *pro se* documents with the West Virginia Supreme Court that included the following: (1) a "Petition for Writ of Prohibition and Correction of Illegal Re-Sentencing Hearing from a Court Outside Kanawha County with Appointed Counsel from Outside Kanawha County;" and (2) a Motion to Submit *Pro Se* Filings. Petitioner's above filings clearly caused delay in the State *habeas* proceedings that are attributed to Petitioner. Without first contacting the Circuit Court to request the scheduling of his omnibus hearing so that the State *habeas* proceedings could resume, Petitioner initiated this proceeding by filing his Section 2254 Petition asserting inordinate delay. Petitioner's repetitive filings challenging the validity of his resentencing and the denial of immediate release, in combination with his continued dissatisfied with appointed counsel, clearly has resulted in delays that are in-part attributable to Petitioner. See Matthews, supra, 51 F.3d at 267(noting that nearly a 4-year delay was not inordinate because some of the delay was attributable to the petitioner); Walkup, 2005 WL 2428163 at 3(stating that the length of delay "is not a determinative factor when some of the delay is attributable to petitioner."). Accordingly,

the record supports a finding that a significant portion of the delay of proceedings concerning Petitioner's third State *habeas* petition is attributable to Petitioner's actions.

Considering the remaining <u>Barker</u> factors, the undersigned finds that the instant case does not rise to the level of a due process violation. Although Petitioner has diligently asserted his rights, there is no indication that any delay in the State court proceedings have prejudiced his position. There is no indication or allegation that any delay has caused any loss of evidence necessary to support Petitioner's *habeas* claims. A review of the docket sheet reveals that reasonable activity has occurred in Petitioner's current *habeas* proceedings. Specifically, the docket sheet reveals that two Losh hearings have occurred, an amended *habeas* petition has been filed, the State's Response has been filed, an omnibus hearing was scheduled and commenced, and two separate attorneys have been appointed to represent Petitioner. Clearly, Petitioner's State *habeas* proceeding is not dormant or languishing in the Circuit Court due to action by the State. Further, there is no indication that the State is intentionally hindering a timely resolution of the *habeas* petition. The current inaction in Petitioner's *habeas* proceedings is due to his failure to notify the Circuit Court that he is ready to proceed with the omnibus hearing that was continued at Petitioner's request. To the extent Petitioner is arguing that it is futile to pursue his omnibus hearing because he cannot receive a "full, fair and impartial hearing," the undersigned finds no evidence to support such a claim.[10] The record reveals that the Circuit Court continued to omnibus hearing at Petitioner's request because Petitioner stated that he was "unprepared" and wished obtain additional witnesses. Thus, the record reveals that the Circuit Court was making

---

[10] Petitioner appears to argue that he will not receive a "full, fair, and impartial hearing" because the Circuit Court usurped the West Virginia Supreme Court's power when the Circuit Court resentenced Petitioner on March 7, 2008. Petitioner further complains that the West Virginia Supreme Court is aware that the Circuit Court usurped the Supreme Court's power, but the Court has failed to take any action. The undersigned finds such argues to be frivolous.

every attempt to provide Petitioner with a full, fair and impartial omnibus hearing. Finally, the record reveals that Petitioner has had at least four attorneys appointed to represent him in his State court proceedings since his underlying conviction, which evidences the State's efforts to protect Plaintiff's due process rights.

Based upon the foregoing and a consideration of the <u>Barker</u> factors, the undersigned finds that Petitioner has failed to exhaust his state remedies and has not raised sufficient grounds to justify excusing the exhaustion requirement. The undersigned cannot find that Petitioner's state remedies have been rendered unavailable or ineffective by inordinate delay that is attributable to the State. The undersigned, therefore, will consider whether a stay should be granted in Section 3 below.

## 2.    Allegations of "Bullying" by Circuit Court:

To the extent, Petitioner argues that Circuit Court bullied, manipulated, and failed to allow Petitioner a full and fair hearing on March 7, 2008, the undersigned will briefly address the claim. Petitioner argues that if this Court reviews the full transcript of the March 7, 2008 hearing, the Court will see how Petitioner was bullied, manipulated, and not allowed a full and fair hearing. (Document No. 18, pp. 3 – 4.) The undersigned has thoroughly reviewed the transcripts from the March 7, 2008 hearing and finds no evidence supporting Petitioner's above claims. (Document No. 13-3.) The Circuit Court determined that Petitioner sought the dismissal of Ms. Cunningham because she refused to include what she considered to be meritless grounds in Petitioner's Petition for Appeal and she had not timely filed Petitioner's Petition for Appeal. (<u>Id.</u>, pp. 6 – 8.) Ms. Cunningham stated that the Petition for Appeal was completed, but not filed because Petitioner instructed her not to file the Petition due to her failure to include certain claims requested by him. (<u>Id.</u>) After discussion with the Court, Ms. Cunningham acknowledge

that she could amend the Petition to include the "meritless" claims Petitioner wished to assert in his Petition. (<u>Id.</u>, pp. 7 – 12, 14 - 15.) The Circuit Court contemplated possible replacement counsel and advised Petitioner that out of the available possible replacements, Ms. Cunningham was the most experienced attorney concerning appeals and that she was already familiar with the facts of his case. (<u>Id.</u>, pp. 5 – 6, 12 - 17.) Finally, the Circuit Court explained to Petitioner that the untimeliness of his Petition for Appeal could be cured by resentencing. (<u>Id.</u>, pp. 17 – 19.) The Circuit Court explained to Petitioner that resentencing by the Circuit Court would reinstate his appeal right and restart the appeal period. (<u>Id.</u>) Petitioner, however, adamantly disagreed and argued that the Court must immediately release him from custody because he had been denied his right to appeal. (<u>Id.</u>, pp. 21, 23 – 28.) Although the Circuit Court explained that Petitioner was not being denied his right to appeal because resentencing would reinstate his appeal rights, Petitioner argued that he should released instead of being be resentenced. (<u>Id.</u>) The Circuit Court rejected Petitioner's argument that he should be released from custody, resentenced Petitioner for the sole purpose of reinstating his appeal rights, and denied Petitioner's request for appointment of new counsel. (<u>Id.</u>, pp. 28 – 29.) The foregoing reveals that the Circuit Court had Petitioner's best internet in mind when denying Petitioner's motion for appointment of new counsel and resentencing Petitioner. There is no indication that Petitioner did not receive a fair hearing or that he was "bullied" by the Circuit Court. Thus, the foregoing allegations do not justify Petitioner's failure to exhaust.

3.      **Stay and Abeyance:**

In <u>Rhines</u>, the Supreme Court determined that when a State prisoner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the district Court may (1) dismiss the petition in its entirety; (2) order a stay and

abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claim claims and proceed with the exhausted claims. <u>Rhines v. Weber</u>, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). The Supreme Court, however, cautioned that a "[s]tay and abeyance, if employed too frequently, has the potential to undermine" the twin purposes of the total exhaustion requirement and the limitation period. <u>Id.</u>, 544 U.S. at 277, 125 S.Ct. at 1534. Specifically, the Supreme Court explained as follows:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

<u>Id.</u>, 544 U.S. at 277, 125 S.Ct. at 1535. Thus, a "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." <u>Id.</u> (noting that "if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim."); <u>also see</u> <u>Demere v. Ballard</u>, 2013 WL 5352950 (N.D.W.Va. Sept. 24, 2013)("this procedure is only appropriate where an outright dismissal could jeopardize the timeliness of a petitioner's collateral attack in federal court").

Applying the <u>Rhines</u> standard to the facts of the instant case, the undersigned finds that a stay and abeyance is not warranted. The undersigned finds that the record does not support such a timeliness concern regarding the filing of Petitioner's Section 2254 Petition. Section 2244(d)(1)(A) provides that a Section 2254 *habeas* petition must be filed within one year after "the date on which the judgment became final by the conclusion of direct review or the

expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[11] The Circuit Court

of Kanawha County resentenced Petitioner on December 10, 2008, for the purpose of reinstating

his appeal rights. Petitioner's resentencing reset the time frame in which Petitioner's conviction

was rendered "final" under AEDPA. See Harper v. Ballard, 2013 WL 285412, *4 - 6 (S.D.W.Va.

Jan. 24, 2013)(J. Chambers)(finding Petitioner's resentencing restarted the clock for purposes of

AEDPA's one-year limitation period); Horn v. Ballard, 2009 WL 914879, * 2 (S.D.W.Va. March

31, 2009)(J. Faber)(finding that petitioner's Section 2254 petition was timely based upon the

reinstatement of petitioner's direct appeal rights by means of resentencing). Petitioner's direct

appeal of his conviction and sentence was granted in part and denied in part by the West Virginia

Supreme Court of Appeals on November 23, 2010. Petitioner did not file a Petition for Writ of

Certiorari in the United States Supreme Court, and therefore his conviction became final under

---

[11] Title 28, United States Code, Section 2244(d)(1) provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A) on February 22, 2011 (90 days after the West Virginia Supreme Court of Appeals denied his Petition for Appeal of his conviction and sentence). See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000). Thus, pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, the one-year statute of limitation would have begun to run on February 23, 2011. The statute of limitations, however, remained tolled because Petitioner filed his second *habeas* petition with the Circuit Court of Kanawha County (Case No. 11-MISC-74) on February 2, 2011. The Circuit Court of Kanawha County denied his second *habeas* petition and Petitioner filed an appeal of the denial of his *habeas* petition to the West Virginia Supreme Court. See Rule 5(f) of the West Virginia Rules of Appellate Procedure. The West Virginia Supreme Court denied Petitioner's petition for appeal on October 19, 2012. The limitation period thus began to run on October 20, 2012, and Petitioner had until October 20, 2013, to file a Section 2254 Application in the United States District Court, unless he again sought post-conviction relief from the State Courts. Petitioner filed his third State *habeas* Petition on November 16, 2012, approximately 26 days after the statute of limitation period began to run (Case No. 12-MISC-603). The Circuit Court of Kanawha County denied his third *habeas* petition and Petitioner filed an appeal of the Circuit Court's denial of his *habeas* petition to the West Virginia Supreme Court. The West Virginia Supreme Court remanded the *habeas* case back to the Circuit Court of Kanawha County for further proceedings. The Court notes that Petitioner's third State *habeas* petition is currently pending before the Circuit Court. Thus, the one-year statute of limitation is currently tolled by Petitioner's third State *habeas* proceeding. Upon the conclusion of Petitioner's third State *habeas* proceeding, Petitioner will have approximately 339 days in which to file a Section 2254 Petition in federal court.[12] Accordingly, the undersigned finds that

---

[12] Petitioner is hereby **NOTIFIED** that the calculations of the statute of limitations set forth in

dismissal will not jeopardize the timeliness of Petitioner's Section 2254 Petition, and he cannot at this time demonstrate good cause for his failure to present his claims to the State Courts prior to seeking federal *habeas* relief. Accordingly, undersigned recommends that Respondent's "Motion to Dismiss" (Document No. 11) be granted and Petitioner's Petition must be dismissed without prejudice.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's "Motion to Dismiss" (Document No. 11), **DISMISS** without prejudice Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 1), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

this Proposed Finding and Recommendation are not conclusively correct. It is Petitioner's

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same Petitioner, who is acting *pro se*, and to counsel of record.

Dated: June 6, 2017.

Omar J. Aboulhosn
United States Magistrate Judge

---

responsibility to file his petition correctly and timely.